UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

IN RE: SLEP-TONE ENTERTAINMENT CORP.
Consolidated cases.

CASE NO. 5:11-cv-32-RS/CJK

PROPOSED FINDINGS OF FACT AND RELEVANT LAW

COME NOW Donovan's Reef Lounge & Package Store, Inc. and Green Glass Mall, Inc., and submit the following proposed findings of fact and relevant law:

COUNT I – TRADEMARK INFRINGEMENT

1. **Slep-Tone failed to prove that Donovan's Reef and/or Green Glass Mall have used the SOUND CHOICE marks in violation of trademark law.** Trademark law "is concerned with the protection of symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." RDF Media Ltd. v. Fox Broad Co., 372 F. Supp. 2d 556 (C.D. Cal. 2005) (quoting EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc., 228 F.3d 56 (2d Cir. 2000)). In contrast, copyright law "protects the artist's right in an abstract design or other creative work." Id. Thus, while trademark law protects the distinctive source-identifying function of a particular mark, copyright law protects the expressive content of an author's creative work as a whole. See Whitehead v. CBS/Viacom, Inc., 315 F. Supp. 2d 1, (D.D.C. 2004). Slep-Tone impermissibly seeks to redress the copying of its music and lyrics - claims that are properly brought under copyright laws - through a trademark infringement action. Slep-Tone's claims are barred by the U.S. Supreme Court's decision in Dastar Corporation v. Twentieth Century Fox Film Corporation, which holds

1

that the Lanham Act does not protect against confusion as to the identity of the author of any idea, concept, or communication (i.e., copyrightable expression). See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37, 123 S.Ct. 2041, 156 L.Ed. 2d 18 (2003). The Supreme Court noted that the Lanham Act protects trademark owners against false designations of origin made by competitors. Under Dastar, Slep-Tone cannot state a Lanham Act claim based on the notion that viewers and participants of karaoke shows are confused as to whether Slep-Tone is the creator of the music and lyrics. The Slep-Tone Complaint states: "The Defendants' use of the Sound Choice marks is likely to cause confusion, or to cause mistake, or to deceive the Defendants' customers and patrons into believing that . . . the Defendants music libraries contain bona fide Sound Choice accompaniment tracks." (Compl. ¶ 182). Accordingly, to the extent Slep-Tone is complaining about confusion occurring in the marketplace as to whether it is the author of its karaoke accompaniment tracks, as opposed to whether it is a source from which karaoke accompaniment tracks are available for purchase, Slep-Tone fails to state a claim of trademark infringement against Donovan's Reef and/or Green Glass Mall.

2. **There was no testimony and/or any other evidence presented with respect to any type of confusion among the customers of Donovan's Reef and/or Green Glass Mall.** To state a claim for trademark infringement under the Lanham Act, Slep-Tone must prove facts demonstrating: (1) ownership of a valid trademark and (2) likelihood of confusion from the defendant's use of the mark. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). In enacting the trademark laws,

Congress clearly intended to protect the reputation of manufacturers and to protect purchasers from confusion. See 15 U.S.C. § 1127 (1988). Therefore, Slep-Tone must show that the use of the contested mark by Donovan's Reef and/or Green Glass Mall is likely to cause confusion. 15 U.S.C. Sec. 1114(1)(a); Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983), cert. denied. The determination of "likelihood of confusion" requires analysis of the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion. Freedom Sav. And Loan Ass'n v. Way, 757 F.2d 1176, 1182 (11th Cir. 1985), cert. denied. 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985); University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir. 1984); Wesco Mfg. v. Tropical Attractions of Palm Beach, 833 F.2d 1484, 1488 (11th Cir. 1984); Sun Banks of Fla. V. Sun Fed. Sav. & Loan, 651 F.2d 311 (5th Cir. 1981). "Likelihood of confusion" is the central focus of any trademark infringement claim. A likelihood of confusion exists when consumers viewing the allegedly infringing mark would probably assume that the product or service it represents is associated with a different product or service identified with a similar mark. A likelihood of confusion exists when a consumer viewing a trademark is likely to purchase the goods under a mistaken belief that the goods are, or are associated with, the goods of another provider. Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215 (9th Cir. 1987). The confusion must "be probable, not simply a possibility." Id. As Professor McCarthy notes:

> Perhaps the reason that it is argued that a non-trademark use of another's mark is not an infringement is that a non-trademark use is highly unlikely to cause actionable confusion. To be an infringement, there must be a likelihood of confusion over source, sponsorship, affiliation or approval. This happens when the potential buyer is confronted with two similar designations, both of which are used as marks. That is, the viewer is confronted with two similar designations which in context tell the viewer that they identify and distinguish a single source. Because defendant is an imitative free rider, each of the contesting designations is used to identify, not a single source, but two different sources. This causes confusion and deception in the viewer's mind. This is trademark infringement.

4 J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition § 23:11.50 (4th ed. 2008). Slep-Tone failed to show a likelihood of confusion.

3. **Slep-Tone provided no testimony and/or any other evidence indicating the alleged use of the Sound Choice marks by Donovan's Reef and/or Green Glass Mall weakened the value of the marks.** "The inclusion of [this] requirement in the Lanham Act serves the Act's purpose: "to secure the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." Bosley Med. Inst., Inc. v. Kremer, 403 F.3d at 672 (9th Cir. 1985) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 774, 112 S.Ct. 2753, 120 L.Ed. 2d 615 (1992)). Slep-Tone failed to show the weakening of the Sound Choice marks as the result of the use by Donovan's Reef and/or Green Glass Mall.

4. **Slep-Tone has alleged likelihood of confusion among viewers and participants in karaoke shows, not confusion among its customers – purchasers of CD+G and MP3+G discs.** Slep-Tone manufactures and distributes compact discs ("CDs") containing music to popular songs along with data that displays the song lyrics

on a video screen when the tracks are played. Donovan's Reef and Green Glass Mall host karaoke shows. In <u>Astra Pharmaceutical Prods. v. Beckman Instruments</u>, 718 F.2d 1201, 220 U.S.P.Q. 786 (1st Cir. 1983), the parties marketed and sold goods marked with the name "ASTRA" to the same purchasing institutions – large hospitals. Both parties manufactured goods "in the same broad health care field." Id. at 1210, 220 U.S.P.Q. at 793. Astra sold pharmaceutical products to hospital pharmacies, and Beckman sold laboratory instrumentation to hospital laboratories. In affirming a grant of summary judgment of no infringement, the court held that use in the same broad field "is not sufficient to demonstrate that a genuine issue exists concerning likelihood of confusion." Id. at 1206, 220 U.S.P.Q. at 790. The court's holding recognized that "[t]he 'hospital community' is not a homogenous whole, but is composed of separate departments with diverse purchasing requirements, which in effect, constitute different markets for the parties' respective products." Id. at 1207, 220 U.S.P.Q. at 791. The court was not concerned with mere theoretical possibilities of confusion, deception, or mistake or with de minimis situations. In an analogous case, <u>Dynamics Research Corp. v. Langenau Mfg. Co.</u>, 704 F.2d 1575, 217 U.S.P.Q. 649 (Fed. Cir. 1983), the court affirmed the Board's conclusion that "because the marks are used on goods that are 'quite different' and sold to different, discriminating customers, there is no likelihood of confusion" even though both parties used the identical mark "DRC". Slep-Tone and Donovan's Reef/Green Glass Mall do not compete for the same customers; therefore, there is no likelihood of confusion.

5.      **There is no direct competition between Slep-Tone and Donovan's Reef and/or Green Glass Mall.** It is well established that the relevant confusion is confusion among the trademark owner's customers in the trademark owner's channels of trade. In the case of In re The W.W. Henry Company, L.P., 82 U.S.P.Q.2d 1213 (T.T.A.B. 2007), the United States Trademark Trial and Appeal Board found that there was no likelihood of confusion between the mark PATCH 'N GO for chemical filler marketed and sold to plastic manufacturers for the repair of plastic and the trademark applicant's PATCH & GO mark for a drywall and cement patch compound marketed and sold to do-it-yourselfers in hardware stores. The Board found that confusion was unlikely because the two products would be sold "to different classes of purchasers through different channels of trade." Likewise, in Electronic Design & Sales, Inc. v. Electronic Data Systems Corp., 954 F.2d 713 (Fed. Cir. 1992), the Court found no likelihood of confusion where the plaintiff sold "E.D.S." computer services while the defendant sold "EDS" power supplies and battery chargers. Even though there was some overlap in the markets at issue, the Court viewed this as a case of sales occurring in separate channels of trade. Slep-Tone alleges that viewers and participants in karaoke shows will be confused by use of the SOUND CHOICE marks; however, the viewers and participants in karaoke shows are not Slep-Tone's customers. Slep-Tone is in the business of selling karaoke accompaniment tracks. Accordingly, there is no likelihood of confusion because the persons allegedly confused - viewers of and participants in karaoke shows - are not the same class of persons who purchase Slep-Tone's karaoke accompaniment tracks. There can be no consumer confusion because the consumers

6

who are allegedly confused (viewers and participants of karaoke shows) are not the consumers of Slep-Tone's products. If the goods in question are completely unrelated, confusion is unlikely and infringement will generally not be found. Slep-Tone's trademark registrations permit use of the SOUND CHOICE marks on "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." Hence, the goods being produced by Slep-Tone are completely different than the services, i.e. karaoke shows, being provided by Donovan's Reef and Green Glass Mall; therefore, no likelihood of confusion, no trademark infringement.

6. **Slep-Tone failed to state a claim for trademark counterfeiting because the SOUND CHOICE marks do not meet the statutory definition of "counterfeit marks."** If counterfeiting is the act of making and/or selling like goods bearing fake trademarks with the primary purpose being to confuse or dupe consumers; obviously, the means by which a karaoke product is used, the hard drive versus the original CD+G disc, is not counterfeiting. To state a claim for trademark counterfeiting, the plaintiff must allege that: (1) Slep-Tone infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit, as the term counterfeit is defined in 15 U.S.C. § 1116. See Too, Inc. v. TJX Companies, Inc., 229 F. Supp. 2d 825 (S.D. Ohio 2002) (citing Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161 (11th Cir. 1994)). A "counterfeit mark" is defined in 15 U.S.C. § 1116 as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered

for sale, or distributed. . ." 15 U.S.C. § 1116(d)(1)(B)(i). Donovan's Reef and/or Green Glass Mall are accused of using the SOUND CHOICE marks in connection with karaoke shows. Accordingly, the SOUND CHOICE marks are not "counterfeit marks".

7. **Slep-Tone provided no notice of any claims of trademark infringement to Donovan's Reef and/or Green Glass Mall prior to the filing of the subject action.** Slep-Tone is engaged in a nationwide litigation campaign. These lawsuits, including this one, are based solely upon the display of the SOUND CHOICE marks on video screens during karaoke shows. Slep-Tone has filed numerous lawsuits with little or no pre-filing investigation and no warning. Slep-Tone filed its lawsuits en masse for the purpose of coercing settlements rather than protecting legitimate intellectual property rights.

8. **Slep-Tone failed to provide a notice on its CD+G discs with respect to its internal policy of requiring "1-1 correspondence".** Testimony was clear that the "1-1 correspondence" policy of Slep-Tone was not properly noticed or publicized to the purchasers of its Sound Choice CD+G discs. In fact, Mr. Slep, on behalf of Slep-Tone, stated that no such notice was provided on the packaging and/or the CD+G disc itself. Mr. Slep testified that the only notice of the "1-1 correspondence" policy is located on the Sound Choice website.

9. **Slep-Tone failed to provide any testimony and/or any other evidence as to the original CD+G discs purchased by Donovan's Reef and/or Green Glass Mall from Slep-Tone or any of Slep-Tone's distributors.** George Davis, on behalf of Donovan's Reef & Green Glass Mall, introduced invoices where the Sound Choice discs

were purchased from Slep-Tone's distributors. These invoices clearly indicated that more than one of the same Sound Choice CD+G discs were being purchased by Donovan's Reef and/or Green Glass Mall. In addition, Mr. Davis testified that many original Sound Choice CD+G discs that were previously purchased had been either lost, stolen, or broken.

10. **Donovan's Reef and Green Glass Mall do not advertise and/or promote their karaoke shows.** To prevail on its claim of trademark infringement, Slep-Tone must establish that Donovan's Reef and/or Green Glass Mall used the SOUND CHOICE marks or similar marks in commerce in connection with the sale or advertising of goods, i.e. those goods attached to the Sound Choice marks. Donovan's Reef and Green Glass Mall, without any advertising or promotion, provide only local karaoke shows.

11. **Donovan's Reef and/or Green Glass Mall have not used the SOUND CHOICE marks in commerce.** To satisfy the "in commerce" requirement, Slep-Tone must demonstrate that the allegedly infringing activities have a substantial effect on interstate commerce. Slep-Tone failed to satisfy the "in commerce" condition required under the Lanham Act.

12. **Slep-Tone failed to provide any testimony and/or any other evidence that indicated Donovan's Reef and/or Green Glass Mall was selling, offering for sale, or distributing any copies of the original Sound Choice CD+G discs.** Trademark infringement is proscribed by 15 U.S.C. § 1114(1)(a), which prohibits any person from the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a

registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Donovan's Reef and/or Green Glass Mall do not sell, offer for sale, or distribute copies of the Slep-Tone products.

13.     **Slep-Tone never communicated any concerns to its customers that the quality of its product is not as good if played through a hard drive vs. directly from the original CD+G disc.** Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the name "Sound Choice". According to Slep-Tone, Donovan's Reef and Green Glass Mall have unlawfully copied the CDs and are using the copied music to perform karaoke shows and, in the course of doing so, are displaying the SOUND CHOICE marks without Slep-Tone's consent. Mr. Slep testified that the quality of the Sound Choice track being played from a hard drive is not as good as if it was being played directly from the CD+G disc; however, Mr. Paynter and Mr. Davis testified that there was no difference in quality from a hard drive versus the original CD+G disc. There was no evidence presented that any customers of Donovan's Reef and/or Green Glass Mall ever complained with respect to the quality of the karaoke track being provided directly from the hard drive.

14.     **The SOUND CHOICE marks are only being used to identify Slep-Tone as the source of the karaoke accompaniment tracks.** Slep-Tone's claims are barred by the doctrine of nominative fair use. Nominative fair use refers to a defendant's use of the plaintiff's trademark to describe or identify the plaintiff's product. 3 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 23:11 (4th ed. 2006 &

10

Supp. 2012). "[A] defendant who raises the nominative fair use issue need only show that it uses the mark to refer to the plaintiff's trademarked goods or services. The burden then reverts to the plaintiff to show a likelihood of confusion under the nominative fair use analysis." Id. § 23:11. Donovan's Reef and/or Green Glass Mall used Slep-Tone's SOUND CHOICE marks to, at most, identify Slep-Tone as the source of the karaoke accompaniment tracks. Slep-Tone alleges that the music tracks played are copies of Slep-Tone's music; however, when Donovan's Reef and/or Green Glass Mall conduct the karaoke shows, the SOUND CHOICE marks are only seen in connection with Slep-Tone's actual accompaniment tracks. Thus, the SOUND CHOICE marks are used in connection with Slep-Tone's music and lyrics, not those of some other party. In this case, Slep-Tone uses its SOUND CHOICE marks to identify itself as the source of the goods listed in its trademark registrations. Slep-Tone does not use its SOUND CHOICE marks to identify itself as a provider of karaoke services. Slep-Tone's trademark registrations do not cover karaoke services. The SOUND CHOICE marks are not being used to identify the karaoke services offered by Donovan's Reef and/or Green Glass Mall. Accordingly, Slep-Tone's claims are barred by the doctrine of nominative fair use.

15. **Slep-Tone failed to present any testimony and/or any other evidence with respect to any actual damages and/or lost profits in connection with the allegations of trademark infringement against Donovan's Reef and/or Green Glass Mall.** In <u>Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.</u>, 496 F.3d 1231) (11th Cir. 2007), the court stated that trademark infringement, in violation of

the Lanham Act, 15 U.S.C. § 1114, provides, subject to the principles of equity, that a successful plaintiff may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action. 15 U.S.C. § 1117(a). The court determined that an accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct. See Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1521 (11th Cir. 1990). A willful violation of a trademark occurs where the infringer was "knowingly and deliberately cashing in upon the good will of [the infringed]". Burger King v. Mason, 855 F.2d 779, 781 (11th Cir. 1988) (per curiam). Unjust enrichment occurs when an infringer has "enriched themselves by tapping the reputation and good will of [the infringed]." Khimani, 892 F.2d at 1521 n.9. Slep-Tone has failed to show any willful conduct of Donovan's Reef and/or Green Glass Mall at the expense of Slep-Tone.

16. **Donovan's Reef and Green Glass Mall did not obtain its liquor sales at the expense of Slep-Tone, the owner of the Sound Choice marks.** Slep-Tone failed to provide any evidence that any of the liquor sales of Donovan's Reef and/or Green Glass Mall are attributable to its alleged infringement of the Sound Choice marks. Furthermore, there was no evidence that Donovan's Reef and/or Green Glass Mall were improperly using the Sound Choice marks to its financial advantage. The court in Optimum required Optimum to establish that HCA's alleged Lanham Act violations proximately caused it to suffer monetary damages. Id. at 1232. See, e.g., Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir. 1994) (stating that a Lanham Act

12

claim requires evidence that the plaintiff "suffered actual damages," that is, that "the loss was caused by defendants' actions" (citation omitted); Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 919 (Fed. Cir. 1984) (stating that a Lanham Act claimant must show "tangible, recoverable damages"). The court found that Optimum's expert testimony should not have been admitted. The evidence failed to establish a connection between the conduct at issue (HCA's use of the mark on the website) and the claimed damages. The court found that there was "no legally sufficient evidentiary basis for a reasonable jury to find for Optimum on the issue of damages", and awarded judgment as a matter of law to HCA. Slep-Tone failed to provide any connection and/or causation between its allegations of trademark infringement against Donovan's Reef and/or Green Glass Mall and their liquor sales.

## COUNT II – UNFAIR COMPETITION

17. **Slep-Tone failed to provide any testimony and/or other evidence against Donovan's Reef and/or Green Glass Mall for unfair competition due to the alleged use of the SOUND CHOICE marks.** "When trademark and unfair competition claims are based on the same [allegedly] infringing conduct, courts apply the same analysis to both claims." Toho Co., Ltd. v. William Morrow and Company, Inc., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998) Count II of Slep-Tone's Complaint is based upon the same allegedly infringing conduct as Count I. Accordingly, because Slep-Tone has failed to state a claim for trademark infringement, it has also failed to state a claim for unfair competition against Donovan's Reef and/or Green Glass Mall.

COUNT III – FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

18. **Slep-Tone failed to provide any testimony and/or other evidence that Donovan's Reef and/or Green Glass Mall used the SOUND CHOICE marks unfairly or deceptively for their benefit and at the expense of Slep-Tone.** The Florida Deceptive and Unfair Trade Practices Act provides, in relevant part, as follows:

> Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. § 501.204(1), Fla. Stat.

This Act only provides remedies for consumer transactions and has no application to a cause of action for damages based on trademark infringement. Babbitt Electronics, Inc. v. Dynascan Corp., 828 F.Supp. 944, 958 n. 7 (S.D. Fla. 1993), aff'd. 38 F.3d 1161 (11th Cir. 1994).. As discussed in Nassau v. Unimotorcyclists Society of America, Inc., 59 F.Supp. 2d 1233 (M.D. Fla. 1999), the plaintiff was not able to meet its burden of establishing unfair or deceptive trade practices due to plaintiff's inability to demonstrate that defendants passed off their services or goods as plaintiff's or otherwise benefited from plaintiff's mark; therefore, plaintiff could not prevail on the infringement claim. Slep-Tone failed to show that Donovan's Reef and/or Green Glass Mall was unfairly or deceptively using the Sound Choice marks for their benefit at the expense of Slep-Tone. In addition, Slep-Tone failed to provide any testimony and/or any other evidence of actual damages; therefore, since the FDUTPA only provides relief for actual damages, Slep-Tone's claim must fail under FDUTPA.

## CONCLUSION

In conclusion, Donovan's Reef and/or Green Glass Mall have not infringed upon the Sound Choice marks based upon the following:

1. Any alleged improper use of the Sound Choice accompaniment tracks would fall under copyright law, not trademark law.

2. Slep-Tone and Donovan's Reef and/or Green Glass Mall are not competitors; therefore, there is no confusion, no trademark infringement.

3. There was no confusion among the customers of Donovan's Reef and/or Green Glass Mall as to the source of the karaoke accompaniment tracks.

4. Slep-Tone provided no notice of any claim of trademark infringement and/or its policy of "1-1 correspondence" to Donovan's Reef and/or Green Glass Mall.

5. There were no actual damages suffered by Slep-Tone.

6. There was no connection between the liquor sales of Donovan's Reef and/or Green Glass Mall and the alleged trademark infringement.

7. No customers of Donovan's Reef and/or Green Glass Mall ever complained with respect to the quality of the karaoke tracks being provided directly from the hard drive.

8. Donovan's Reef and/or Green Glass Mall did not advertise and/or promote the karaoke shows.

9. Donovan's Reef and/or Green Glass Mall have not used the Sound Choice marks "in commerce".

10. Donovan's Reef and/or Green Glass Mall did not sell, offer for sale, or distribute any copies of the original Sound Choice CD+G discs.

11. The use of the Sound Choice marks by Donovan's Reef and/or Green Glass Mall did not weaken the value of these marks.

12. Any alleged improper use of the Sound Choice marks would be barred by the doctrine of nominative fair use.

13. If the trademark infringement claim fails, then the unfair competition claim must also fail.

14. The Florida Deceptive and Unfair Trade Practices Act does not provide a remedy for the alleged trademark infringement.

WHERFORE, PREMISES CONSIDERED, Donovan's Reef and Green Glass Mall respectfully request that all claims by Slep-Tone be denied.

Dated this 13 day of July, 2012.

Mitch Dever
Florida Bar No. 0939730
P.O. Box 9811
Panama City Beach, FL 32417
Telephone: (850) 234-5555
Attorney for Defendants, Donovan's Reef
Lounge & Package Store, Inc. and
Green Glass Mall, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, the above and foregoing has been electronically filed in the United States District Court, Northern District of Florida, Tallahassee Division, by using the CM/ECF system, which will send notification of such filing to all persons registered for this case.

_____
Mitch Dever