IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**In Re SLEP-TONE ENTERTAINMENT CORP.**
**consolidated cases,**

                                                **CASE NO. 5:11-cv-32/RS-CJK**

_____/

## JUDGMENT

**Procedural History**

If the number of defendants in this action is any indication, karaoke is popular in the various watering holes of the Northern District and throughout Florida. Plaintiff brought five trademark infringement cases against dozens of defendants representing a who's who of Florida's nightlife. The names read like Facebook updates from spring break: Tequila Mexico, Mugs N Jugs, Malibu Lounge. Those cases were consolidated into this action. (Doc. 66). I transferred numerous defendants to the appropriate judicial district. (*e.g.* Doc. 71).

After months of settlement conferences, many of the defendants chose the door rather than face the music. Now that it's "last call," only three defendants remain: Donovan's Reef Lounge & Package Store, Inc. ("Donovan's"), Green Glass Mall Inc. ("Green Glass"), and Robert L. Paynter, Sr. A nonjury trial was conducted before the Court July 2 and 3, 2012, on Plaintiff's three count complaint for trademark infringement, unfair competition, and Florida deceptive and unfair trade practices. The parties were

allowed to submit proposed findings of fact and conclusions of law.  (*See* Docs. 197, 198, 199, & 200).  I have considered these proposals.

**Findings of Fact**

    Plaintiff is a business involved in the distribution of prerecorded karaoke music products on compact discs.  Tr. 15.  Plaintiff holds a valid registered trademark of the term "Sound Choice." (Pl. Ex. 1 & 3).  The Sound Choice trademark had been renewed several times and is current. (Pl. Ex. 2 & 4).  The Sound Choice mark appears on all of Plaintiff's products including the discs themselves, the accompanying disc inserts, and the video portion of the product that the end-user views.  Tr. 19.

    Plaintiff produces two types of products, Compact Discs plus graphics ("CD+G") and MP3 plus graphics ("MP3+G"), which contain the karaoke songs.  Tr. 20-21.  Each song has a current retail value of seventy-five cents.  In the past, each song had a retail value of $1.50, but Plaintiff lowered the price to compete with pirated copies.  Tr. 60.  Plaintiff sells its product only on disc and does not sell their product on computer hard drives.   Tr. 20-21.  However, many karaoke jockeys ("KJs") and others have transferred the content of their compact discs to hard drive because of the ease by which songs can be played.  Tr. 23.  This process is called "media shifting."  Tr. 23.

    In response to what was occurring in the marketplace, Plaintiff created a "media shifting policy."  This policy contained several components.  First, is the "one-to-one" component which provides that for each song on a hard drive, the possessor must own, have purchased, and still possess the original disc.  Tr. 23.  Second is the notification

component where the user must notify Plaintiff of their intent to media shift.  Finally, the audit component requires that Plaintiff conduct an examination and comparison of the hard drive and the compact discs to ensure the one-to-one ratio.  Tr. 24.  During the audit process, Plaintiff has the capability to determine whether Sound Choice files have been deleted from the hard drive.  Tr. 26.  Entities that go through this process and pass the audit are issued a covenant not to sue which explains the policy and defines their rights.  Tr. 24-25.  Being out of compliance with the one-to-one component voids the entire media shifting policy and covenant not to sue. Tr. at 27-28.

The current media shifting policy has been in place since approximately 2007.  Tr. 62-63 & 118.  Before 2007, the policy evolved with changes in technology in a somewhat ad hoc fashion.  The policy is communicated to users with literature included with each new disc and in various trade magazine advertisements.  Tr. 62-63 & 81.  Copies of the policy or of the communications of the policy were not submitted into evidence.

Before this policy was implemented in 2007, Plaintiff contends that it did not grant its consent to *any* media shifting.  Tr. 236.  Mr. Slep testified that the discs themselves contained the "standard" warning that copying, rebroadcasting, or retransmission is not permitted.  Tr. 64.  Thus, Mr. Slep asserted that by default, no copying was allowed.  Tr. 80.  No discs were introduced into evidence which bore these warnings, although no one contested that the warnings appeared on the discs.

A.   **Corporate Defendants**

Defendants Donovan's and Green Glass[1] (collectively "corporate defendants") are Panama City Beach businesses which have some overlap in ownership. Tr. 144-145. George Davis testified on behalf of both companies as their manager and part owner. *Id*. Each business operates a bar and a separate liquor store. Donovan's also operates a convenience store. *Id*. The corporate defendants put on karaoke shows using their own equipment. Tr. 145.

The equipment mainly consisted of three red hard drives ("the red hard drives") which are identical to each other in terms of karaoke content. Tr. 34, 53-54, 160. The red hard drives were created from an older silver hard drive by transferring the content of the silver drive to each of the three red hard drives. Tr. 160. The silver drive, in turn, was initially created in 2007 when the corporate defendants hired a person to media shift all of their compact disc karaoke holdings onto two silver drives, both of which are no longer functional. Tr. 160. The three red hard drives were used in the following manner: one for Donovan's, one for Green Glass, and one as a backup. Tr. 160.

During discovery in this suit, Plaintiff audited Donovan's red hard drive and compared its content to the corporate defendants' compact disc holdings. Tr. 34.[2] The results of this analysis were admitted into evidence. (Pl. Ex. 5 & 6).[3] The corporate defendants together owned a combined total of 239 Sound Choice *physical* discs. (Pl.

---

[1] Green Glass operates a bar called "Sweet Dreams." Donovan's operates under its own name. Tr. 128
[2] Plaintiff did not audit all three hard drives because the corporate representative stated that the three red hard drives were identical in terms of content.
[3] Besides Sound Choice music, all Defendants contend that their systems possessed karaoke tracts from other producers besides Plaintiff. Plaintiff was limited to inspecting only those digital folders which contained Sound Choice music. They were not allowed to inspect other folders containing music from different karaoke tract producers. Tr. 36.

Ex. 5).  Of the 222 discs appearing on Donovan's hard drive, 80 were missing from Donovan's CD collection.  Of the 222 discs appearing on Green Glass' hard drive, 135 were missing from Green Glass' CD collection.  For the backup hard drive, 211 of 222 were missing.  (Pl. Ex. 6, p. 12); Tr. 41-42.  Plaintiff contends that the corporate defendants were, thus, in violation of their media shifting policy's one-to-one component.

The corporate defendants asserted that, at one time, they were in one-to-one compliance for each of the red hard drives.  Over the years, many discs were lost, stolen, or made inoperable by the smoke-filled and booze-laden environments in which they were stored.  Tr. 160, 171-72.

Mr. Slep visited Green Glass on one occasion and witnessed the Sound Choice mark displayed during several karaoke performances.  Tr. 29.  No other witnesses testified about viewing the Sound Choice mark at any of the Defendants' locations.[4]

Both Green Glass and Donovan's were profitable enterprises and no doubt they profited to some extent by their karaoke shows.  (Pl. Ex. 8, 9, 10, & 11). They did not charge patrons a cover charge or a fee to participate in karaoke.  Tr. 128-29.

## B. Individual Defendant

Defendant Paynter is a karaoke jockey; he is hired by individuals or business to put on karaoke shows.  Tr. 187.  Mr. Paynter owns one karaoke system which is on an external hard drive.  Tr. 176.  He puts on one show per week at a Tallahassee

---

[4] Plaintiff had an investigator visit some of the Defendants' location.  The investigator is now deceased and his report was not admitted into evidence.  Any references to the investigator or his report are not evidence.  See Tr. 225.

establishment named Po' Boys and the occasional private engagement. Tr. 187. For his services, Po' Boys pays him $200 ($175 plus a $25 bar tab). Tr. 188.

In response to this civil litigation, Mr. Paynter "eliminated all of the Sound Choice songs from [his shows] and removed them from his hard drive." Tr. 179-80; Pl. Ex. 13; (Ans., Doc. 118, p.2). Specifically, Mr. Paynter deleted those tracks from his hard drive using the "delete key" but did not use any deleting software. Tr. 179-80 & 287. Mr. Paynter did this because he believed that by deleting the Sound Chose songs he would remedy this lawsuit. Tr. 179. Mr. Paynter did not believe that he was purposefully destroying evidence although Mr. Paynter received a letter about evidence preservation from Plaintiff's counsel along with the summons.[5] (Pl. Ex. 14). However, Plaintiff never inspected Mr. Paynter's hard drive to see if it could determine which tracks had been deleted. Tr. 77-78. Additionally, no witnesses testified to seeing the Sound Choice mark displayed by Mr. Paynter.

**Conclusions of Law**

   **A. Trademark Infringement**

This is not the typical trademark case where the infringer produces a product and markets it under the trademark of another. *E.g., Kentucky Fried Chicken Corp. v. Smith*, 351 F. Supp. 1311 (E.D. Mich. 1972) (Al's Kentucky Fried Chicken infringed on Kentucky Fried Chicken's trademark). This is not even the typical case of pirated media

---

[5] There is some dispute about whether Mr. Paynter was properly served at the beginning of trial. Default was entered against Mr. Paynter because he failed to timely respond to the complaint. (Doc. 88). This default was later set aside because Mr. Paynter brought forth some evidence that his aged father accepted service at the wrong address. (Doc. 113).

sold as an original. *Beachbody, LLC v. Johannes*, 2011 U.S. Dist. LEXIS 90721 (C.D. Cal. 2011) (P90X DVDs sold on eBay). Rather, this is a case where the alleged infringer made an identical replica of Plaintiff's product and displayed them to the public as part of their business.

This is a unique area of trademark law. In general, the infringement of digital media is pursued using copyright law. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) (Posner, J.) (swapping copyrighted music infringes copyright). Here, Plaintiff is not the holder of the karaoke tracks copyright because it is not the singer, songwriter or music publisher. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 920 (2005). Rather, the only avenue by which Plaintiff can protect its product is through the Sound Choice trademark that is displayed on the discs themselves and on the screen during performances. Because copyright and trademarks are related but distinct property rights, *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 721 (9th Cir. 2004), Plaintiff's trademark claim may properly be pursued in this context. That is, the holder of a trademark may restrict its use by the terms of the holder's consent. *See Stevens v. Gladding*, 58 U.S. 447, 452-453 (1855) (purchaser of a copperplate may not use it to make maps where he has not acquired the separate right to print maps).

The Lanham Act makes liable any person who, without the consent of the trademark registrant, uses "in commerce any . . . copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a).

To prevail on a claim of trademark infringement, plaintiff must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark in connection with the . . . distribution . . . of goods or services, and (5) that the defendants used the mark in a manner likely to confuse consumers.  *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

Here, everyone agrees that Plaintiff has a valid mark.  As to the usage element, the only direct evidence in the record is Mr. Slep's one visit to Green Glass where he viewed the Sound Choice mark being displayed.  No other witnesses testified that they viewed the Sound Choice mark at Donovan's or with Mr. Paynter.  Circumstantial evidence exists that the corporate defendants possessed copies of the Sound Choice mark and displayed them.  Mr. Davis testified that two of the three red hard drives were used either at Green Glass or Donovans.  Those hard drives contained Sound Choice music as well as music from other producers.  It is likely that some Sound Choice songs were played in the many years since the corporate defendants began hosting karaoke shows.  Plaintiff has met its burden as to this element for the corporate defendants.

As to Mr. Paynter, the <u>only</u> evidence Plaintiff has presented that he used their product is the fact that he admits to possessing Sound Choice recordings and to deleting them from his hard drive.  Because the hard drive was never inspected, we do not know how many songs were deleted from his hard drive.  And, more importantly, we do not know the ratio of songs on hard drive to songs on CD.

Plaintiff asks the Court to use the adverse inference rule because Mr. Paynter admits to deleting Sound Choice tracks after this litigation was begun. The adverse inference rule provides that "when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) (citation and quotation omitted). An adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. *Bashir v. AMTRAK*, 119 F.3d 929, 931 (11th Cir. 1997).

I find that the adverse inference rule is not applicable to the facts of this case. First, Plaintiff never sought to remedy the situation by seeking production of Mr. Paynter's hard drive so that it could analyze which songs had been deleted. Second, the issues surrounding the service of Mr. Paynter draw into question whether he had received Plaintiffs warnings not to destroy evidence. Finally, it may have been wrong for Mr. Paynter to believe that deleting the offending material would remedy the situation, but Plaintiff has not demonstrated that it was done in bad faith. For these reasons, I find that Plaintiff has not met its burden to establish that Mr. Paynter improperly used the trademark.[6]

Turning to the third prong, Plaintiff has satisfied its burden to establish that the corporate defendants' use was "in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001) (holding that free distribution of software over

---

[6] Plaintiff also argues for an adverse inference against the corporate defendants based upon circumstantial evidence that they hid evidence. (Doc. 198, p. 17-18). Plaintiff should have addressed evidentiary concerns with a pretrial motion directed at these specific issues. I find that Plaintiff has not met its burden to show that the adverse inference rule is applicable to the corporate defendants.

the internet is sufficient to meet in commerce prong). "The term 'use in commerce' denotes Congress's authority under the Commerce Clause rather than an intent to limit the Lanham Act's application to profit making activity. *Id*. (citation and quotation omitted).

Likewise Plaintiff has satisfied its burden to establish that the corporate defendants used the mark "in connection with the . . . distribution . . . of goods or services." That is, the Sound Choice mark was displayed during the presentation of a karaoke show, a service provided by Green Glass and Donovans. [7]

Finally, Plaintiff has also satisfied its burden to establish that the corporate defendants use was likely to cause confusion. There are seven factors to be considered as to the likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Aronowitz v. Health-Chem Corp*., 513 F.3d 1229, 1239 (11th Cir. Fla. 2008) (citation omitted). "Of these, the type of mark and the evidence of actual confusion are the most important." *Id*.

Because the products in question were media shifted, the displayed trademarks were identical, or nearly identical to the original product. Thus, the similarity of the mark could not be distinguished from Plaintiff's registered mark. Defendants intended to make them indistinguishable and most customers likely never knew that they were viewing unauthorized copies of the karaoke tracks.[8]

---

[7] If Plaintiff had satisfied its burden for usage for Mr. Paynter, his usage would also have been in commerce and in connection with the distribution of a service.
[8] If Plaintiff had satisfied its burden for usage for Mr. Paynter, they would have established this element.

Defendants argue that they had some form of implied consent to display the Sound Choice mark during their karaoke shows. In essence, their argument is that the "standard" warning contained on the discs was meant only to protect the copyright holder (i.e. the recording artist etc.) and not Plaintiff who was the trademark holder. They thus contend that they were free to transfer their disc collection to hard drive. None of the parties have cited a case on point. However, I find that a generalized warning which prohibits copying a disc is sufficient to put a user on notice that the trademark holders do not consent to copying their associated marks.

Defendants also assert that the media shifting policy is ineffective because it was not properly communicated to them. I need not reach this issue because I find that the standardized warning on the discs prohibited all copying by default.

### B. Unfair Competition

Section 43(a) of the Lanham Act creates civil liability for

> [a]ny person who, on or in connection with goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1).

The facts which support a cause of action for trademark infringement also support a cause of action under unfair competition. *Chanel, Inc. v. Italian Activewear of Florida*,

*Inc.*, 931 F.2d 1472, 1475, n.3 (11th Cir. 1991). The same set of facts enabling a party to prevail under Section 1114(a)(1) will result in recovery pursuant to Section 1125. *Babbit Elecs. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (citation omitted).

Plaintiff has therefore met its burden to establish that the corporate defendants engaged in unfair competition, but failed to meet its burden for Mr. Paynter. *Supra Section A*.

### C. Deceptive and Unfair Trade Practices

A claim for damages under Florida's Deceptive Trade Practices statute has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Wright v. Emory*, 41 So. 3d 290, 292 (Fla. 4th DCA 2010). Engaging in trademark infringement is an unfair and deceptive trade practice under this Section. *TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 2012 U.S. Dist. LEXIS 58449, *19-20 (S.D. Fla. 2012) (*citing Sun Protection Factory, Inc. v. Tender Corp.*, 2005 U.S. Dist. LEXIS 35623 (M.D. Fla. 2005)).

Plaintiff has therefore met its burden to establish that the corporate defendants engaged in deceptive and unfair trade practice, but failed to meet its burden for Mr. Paynter. *Supra Section A*.

### D. Damages

Each of Plaintiff's three counts require that Plaintiff establish damages. Under the trademark law, a registrant whose rights are violated may generally recover the

defendant's profits from the infringing activity (or its own damages or both) together with costs of the action.  The registrant may also be entitled to injunctive relief.  15 U.S.C. § 1117(a).

> In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

*Id*.

Proving the corporate defendants' sales is a difficult task in this case because Plaintiffs did not charge a fee for their karaoke shows or a fee to enter their establishment.  The shows were an incident to their bar business.  No reasonable calculations have been made which reliably track the percentage of the corporate defendants' bar sales which are linked to their karaoke performances.  At Donovan's, karaoke is performed for 12.2% of their open hours. (Ex. 11).  At Green Glass, karaoke is performed for 40.2 % of their open hours.  *Id*.  Plaintiff suggests that damages may be calculated by taking that portion of the corporate defendants' bar sales in proportion the

hours karaoke was available to customers.[9]  I find that this methodology is flawed and is not supported by the text of Section 1117(a).

Section 1117(a) requires Plaintiff to "prove defendants' sales."  Plaintiff may have proven defendants' bar sales by a preponderance of the evidence.  Plaintiff has not, however, traced those sales in a reliable way to karaoke performances.  It is unreasonable to ascribe every liquor sale occurring in proportion to the hours when karaoke is playing to the karaoke performance itself.

Because defendants' profits are an unreliable measure of damages, I find that Plaintiff' s own damages--its lost revenue--is the only reasonable approach.  Plaintiff has sustained $9,585.00 in damages which represent the amount of lost revenue for a total of 426 discs at the wholesale price.  I find that this is sum is justified and comports with the policies outlined in 15 U.S.C. § 1117(a)

I decline to enter an injunction against the future use of the Sound Choice mark because the boundaries of media shifting policy are ill defined and it would be difficult to fashion an injunction to comport with that policy.   The defendants are now on notice that their use is subject to Plaintiff's scrutiny and are cautioned that their future actions must comply with applicable trademark laws.

---

[9] Plaintiff modifies the proportion that should be taken of defendants' total sales using handwritten notes/calculations made by Defendants. (Ex. 11, Ex. 8-10).  There is no competent testimony as to the meaning of those calculations beyond that they represent the total sales of the corporate defendants and the proportion of hours that karaoke was available.  I do not find that they are an admission by the defendants that a certain percentage of their sales are directly attributable to karaoke.

**IT IS ORDERED**:

1. Judgment is entered in favor of Defendant Robert L. Paynter, Sr. and against Plaintiff Slep-Tone Entertainment Corporation.  Plaintiff shall take nothing.

2. Judgment is entered in favor of Slep-Tone Entertainment Corporation and against Defendants Donovan's Reef Lounge & Package Store, Inc. and Green Glass Mall Inc. jointly and severally in the amount of $9,585.00.

**ORDERED** on July 17, 2012.

<div style="margin-left: 40%;">

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**

</div>